cation for declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 is **DENIED WITHOUT PREJUDICE.**

No Costs.

Kathleen C. MULLIS, Plaintiff,

v.

**MECHANICS & FARMERS BANK;**
**Monarch Temporary Services, Inc.;**
**and Jerry M. Spence, Defendants.**

**Civil No. 2:97CV697.**

United States District Court,
M.D. North Carolina,
Greensboro Division.

Oct. 17, 1997.

Jerry R. Everhardt, Greensboro, NC, for Kathleen C. Mullis.

Charles A. Edwards, Womble Carlyle Sandridge & Rice, Raleigh, NC, for Mechanics & Farmers Bank.

Eric Coates Michaux, Michaux & Michaux, Durham, NC, for Monarch Temporary Services, Inc.

Bryan Edward Wardell, The Banks Law Firm, P.A., Raleigh, NC, Sherrod Banks, Banks Law Firm, P.A., Raleigh, NC, for Jerry M. Spence.

## MEMORANDUM OPINION

BULLOCK, Chief Judge.

Before the court are the motions of Monarch Temporary Services, Inc. (hereinafter "Monarch") and Mechanics & Farmers Bank (hereinafter "Mechanics") to dismiss Plaintiff's complaint.[1] Plaintiff initiated this action on May 14, 1997, by filing a complaint in state court against Defendants Monarch, Mechanics, and Jerry M. Spence (hereinafter "Spence"). The complaint contains several causes of action arising out of Plaintiff's claim that she was subjected to sexual harassment and was discharged from her work at Mechanics because of her sex and in retaliation for complaints of sexual harassment. On June 30, 1997, Defendants re-

1. The court notes that, technically, Monarch's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is untimely because it was made after Monarch filed its answer. Fed. R.Civ.P. 12(b) ("A motion making any of these defenses shall be made before pleading if a further pleading is permitted."); *see* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (2d ed.1990). However, Federal Rule of Civil Procedure 12(h)(2) provides that the defense of failure to state a claim upon which relief can be granted may be raised on a motion for judgment on the pleadings or at the trial on the merits. Consequently, Monarch could raise its failure to state a claim defense through a motion for judgment on the pleadings, and the court will characterize Monarch's motion as such. *See* Charles A. Wright & Arthur R. Miller, *supra*, § 1357. This distinction does not affect the outcome of this motion because the court "will apply the same standards for granting the appropriate relief as it would have employed had the motion been brought under [Rule 12(b)(6) ]." *Id.*, § 1367.

moved the case to this court pursuant to 28 U.S.C. § 1441.

Plaintiff asserts the following claims against Monarch: (1) intentional discrimination on the basis of Plaintiff's sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.,* and of the North Carolina Equal Employment Practices Act ("NCEEPA"), N.C.Gen.Stat. § 143–422 .1 *et seq.;* (2) retaliatory discharge in violation of Title VII and of the NCEEPA; and (3) wrongful or bad faith discharge in violation of North Carolina public policy. Plaintiff brings the same state law claims against Mechanics as well as an additional state law claim for intentional or negligent infliction of emotional distress. However, she does not assert any Title VII claims against Mechanics.[2]

For the reasons discussed below, the motions will be granted in part and denied in part.

## FACTS

In assessing whether Plaintiff's complaint fails to state a claim upon which relief can be granted, the court will take as true the facts alleged by Plaintiff.

On January 29, 1996, Plaintiff was assigned by Monarch to work as a temporary loan secretary for Mechanics at a Mechanics branch located in Durham, North Carolina. Approximately one week after Plaintiff began her assignment at Mechanics, Spence assumed the position of vice president/branch manager at Plaintiff's branch and thereafter acted as Plaintiff's immediate supervisor.

Throughout the course of her assignment at Mechanics, Plaintiff alleges that she was subjected to repeated sexual harassment by Spence in the form of unwelcome physical and verbal conduct. Plaintiff also alleges that the conduct made her physically ill. The physical conduct included instances where Spence would place his hand intentionally on Plaintiff's legs while he retrieved forms from her desk and where Spence would pass by Plaintiff intentionally while she stood at the photocopier and brush the front of his body against her. Pl.'s Compl. ¶ 7–8 attached as Ex. 1 to Defs.' Notice of Removal.

The verbal conduct included comments such as " 'You are a good-looking white woman' " and asking Plaintiff if she had "ever gone out with a black man." Pl.'s Compl. ¶ 9. Additionally, Plaintiff alleges that in early April 1996 she went to Spence to inquire about the personal loan she had applied for in late March 1996, and that Spence had replied that he would approve the loan when "he got what he wanted." Pl.'s Compl. ¶ 9.

Sometime during February of 1996, Plaintiff reported Spence's offensive behavior and its effect upon her physical health to James E. Sansom ("Sansom"), a senior vice president of Mechanics and Spence's supervisor. Plaintiff alleges that Sansom said he would "speak to" Spence regarding his behavior. Pl.'s Compl. ¶ 10. While Plaintiff is without information as to whether Sansom actually met with Spence, she does allege that, several days after she reported Spence's behavior to Sansom, Spence told Plaintiff that her "mouth would get her in trouble." *Id.* Other than Sansom's statement that he would speak to Spence, Plaintiff alleges that Mechanics made no investigation into Plaintiff's complaint and made no effort to remedy Spence's behavior or its effect upon Plaintiff. Plaintiff also alleges that she made her supervisor at Monarch, Rebecca Murdock ("Murdock"), aware of her situation at Mechanics and that Monarch made no investigation into and made no attempt to remedy her situation at Mechanics other than telling Plaintiff to "hang in there." Pl.'s Compl. ¶ 12.

On April 8, 1996, Plaintiff telephoned Spence and informed him that she would not be reporting to work that day as a result of an illness. Plaintiff told Spence that the illness was caused by her work situation. Later than day, Murdock telephoned Plaintiff and told her that she would not be returning to work at Mechanics. Plaintiff subsequently filed a complaint of sexual harassment

**2.** Plaintiff also brings a state law claim for intentional or negligent infliction of emotional distress against Spence, who has not, as of the writing of this opinion, brought any motion challenging the sufficiency of Plaintiff's claim.

against Mechanics and Monarch with the United States Equal Employment Opportunity Commission ("EEOC") on or about May 19, 1996. Plaintiff received a right-to-sue letter from the EEOC regarding Monarch on January 27, 1997. Plaintiff makes no claim against Mechanics under Title VII.

## DISCUSSION

Dismissal for failure to state a claim upon which relief can be granted is improper "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In considering the present motions, the court accepts as true all well-pleaded allegations and views the complaint in the light most favorable to the plaintiff. *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993).

### A. Title VII Claims Against Monarch

#### 1. Intentional discrimination on the basis of sex

Plaintiff's claims for intentional discrimination on the basis of sex is in essence a claim for hostile environment sexual discrimination. *See Meritor Sav. Bank FSB v. Vinson*, 477 U.S. 57, 63–64, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (recognizing that Title VII provides a remedy for victims of sexually hostile working environments). To sustain a claim for hostile environment discrimination under Title VII, a plaintiff must allege and prove that (1) she was harassed because of her sex; (2) the harassment was unwelcome; (3) the harassment was sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive or hostile work environment; and (4) some factual basis exists for imputing liability to the employ-

er. *See Hartsell v. Duplex Prods., Inc.*, 123 F.3d 766, 771–72 (4th Cir.1997).

Monarch, focusing on the fourth element, asserts that it was not Plaintiff's "employer" under Title VII. Analysis of this issue proceeds in two steps. First, the court must determine whether Monarch was Plaintiff's employer. If Monarch was Plaintiff's employer, then the analysis turns to whether Plaintiff has alleged a factual basis to show that Monarch should be liable for Spence's alleged harassment.

■ To establish that the defendant is her employer, a plaintiff must show that the defendant meets the statutory definition of employer,[3] and that an employer-employee relationship existed between herself and the defendant. *See Garrett v. Phillips Mills, Inc.*, 721 F.2d 979, 980 (4th Cir.1983) (interpreting Age Discrimination in Employment Act ("ADEA"), in which the operative language is identical to the operative language in Section 703(a)(1) of Title VII, to mean that an "individual" only has a cause of action under the ADEA if he is an employee of the defendant); *Haavistola v. Community Fire Co. of Rising Sun, Inc.*, 6 F.3d 211 (4th Cir.1993) (applying *Garrett* analysis to determine whether plaintiff was an employee or independent contractor in Title VII action).[4]

In determining whether an employer-employee relationship is present under Title VII, the Fourth Circuit has recently directed that courts are to be guided by " 'the conventional master-servant relationship as understood by common-law agency doctrine.' " *Cilecek v. Inova Health Sys. Servs.*, 115 F.3d 256, 259 (4th Cir.1997) (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322–23, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992) (adopting a common law test for who qualifies as an employee under ERISA)). The

**3.** Title VII defines the term "employer" to include "a person engaged in industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year and any agent of such person." 42 U.S.C. § 2000e(b).

**4.** The employee requirement is much clearer under the retaliation provisions of Title VII, which refer to "employees" and "applicants for employ-

ment" as opposed to "individuals." *See* 42 U.S.C. § 2000e–3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of his *employees* or *applicants for employment* ... because he has opposed any practice made an unlawful employment practice ... or participated in any manner in an investigation proceeding or hearing under this subchapter.") (emphasis added).

*Cilecek* court explained, "In order to establish a uniform nationwide application of the terms 'employer,' 'employee,' and 'scope of employment' for the purposes of applying federal statutes [where Congress has left those terms largely undefined] [the Supreme Court] instructs that we rely on 'the *general common law of agency....*'" *Cilecek,* 115 F.3d at 259–60 (emphasis added by *Cilecek* ) (quoting *Community for Creative Non-Violence v. Reid,* 490 U.S. 730, 740–41, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989)). The Supreme Court has noted that it looks to such sources as the *Restatement of Agency* to determine the common law of agency. *See Reid,* 490 U.S. at 752 n. 31.

■ Monarch does not dispute that it falls within definition of employer, but instead contends that it cannot be liable because Plaintiff was not its employee. In this case, Plaintiff alleges that she was employed as a temporary employee by Monarch and that Monarch placed her in a temporary assignment with Mechanics. At common law, the status of an individual employed under such circumstances was analyzed under the loaned-servant doctrine. The loaned-servant doctrine provides that an employee directed or permitted to perform services for another "special employer" may become the special employer's employee while performing those services. *See Maynard v. Kenova Chem. Co.,* 626 F.2d 359, 361 (4th Cir.1980) (per curiam) (citing *Restatement (Second) of Agency* § 227 (1958)). Cases applying the loaned-servant doctrine to the temporary employee context present in this case have generally held that, where the special employer controls the means and manner of the temporary employee's work, the temporary employee is considered an employee of *both* the temporary agency and the special employer. *See, e.g., Amarnare v. Merrill Lynch Pierce Fenner & Smith, Inc.,* 611 F.Supp. 344 (S.D.N.Y.1984), *aff'd,* 770 F.2d 157 (2d Cir. 1985) (holding that temporary employee was employee of both temporary agency and special employer for purposes of Title VII); *Maynard,* 626 F.2d 359 (same for purposes of state worker's compensation law); *Beaver v. Jacuzzi Bros., Inc.,* 454 F.2d 284 (8th Cir.1972) (same for purposes of state worker's compensation law). In view of these

traditional agency principles, Plaintiff's complaint sets forth a basis for finding that both Monarch and Mechanics were her employer for Title VII purposes.

■ Finding that Monarch was Plaintiff's employer does not end the inquiry, however. The complaint must also assert a basis for holding an employer liable for the alleged harassment. As with the definitions of employer and employee, the Supreme Court has stated, without setting forth a definitive rule, that traditional agency principles should govern employer liability for conduct which creates a hostile environment. *See Meritor,* 477 U.S. at 72; *Andrade v. Mayfair Management, Inc.,* 88 F.3d 258, 261 (4th Cir.1996). The Fourth Circuit, in return, has established that "an employer is liable for a sexually hostile work environment created by a supervisor or other employee only if the employer knew or should have known of the illegal conduct and failed to take prompt and remedial action." *Andrade,* 88 F.3d at 261 (citations omitted).

■ The *Andrade* standard by its terms does not necessarily apply to the situation present here because the alleged harasser was neither a supervisor nor an employee of Monarch. Nevertheless, it is well established that employers can be liable for the harassment of employees by persons who are not employees of the charged employers. *See, e.g., Waltman v. International Paper Co.,* 875 F.2d 468, 471 (5th Cir.1989) (court found a triable issue as to whether employer failed to take prompt remedial action in response to complaints of sexual harassment, one of which involved harassment by an independent contractor); *Jarman v. City of Northlake,* 950 F.Supp. 1375, 1377–80 (N.D.Ill.1997) (city employee allegedly harassed by an elected official who was not considered an employee of the city); *Powell v. Las Vegas Hilton Corp.,* 841 F.Supp. 1024, 1029 (D.Nev.1992) (casino held liable where blackjack dealer alleged employer failed to respond to her numerous complaints that customers were sexually harassing her). In this context, the EEOC guidelines on sexual harassment provide that an employer may be

held liable for the harassment of an employee by a non-employee where

> the employer (or its agents or supervisory employees) knows or should have known of the [harassment by the non-employee] and fails to take immediate and appropriate corrective action. In reviewing these cases the Commission will consider the extent of the employer's control and any other legal responsibility which the employer may have with respect to the conduct of such non-employees.

29 C.F.R. § 1604.11(e) (1996).

Whether the court applies the "prompt and adequate remedial action" standard from *Andrade* or the "immediate and appropriate corrective action" standard from the EEOC guidelines, Plaintiff has met her burden stating a claim that Monarch is liable for Spence's alleged harassment. First, Plaintiff alleges that she reported Spence's behavior directly to Murdock, whom Plaintiff alleges was her supervisor and was a manager at Monarch, in February of 1996. Thus, Plaintiff has alleged that Monarch was aware of Spence's conduct.

Plaintiff further alleges that Monarch made no investigation into or attempt to remedy her situation. Even if one assumes, as Monarch suggests, that Monarch's removal of Plaintiff from her position on April 8, 1996, constituted adequate or appropriate remedial action, that response occurred six-to-eight weeks after Plaintiff's report. This court fails to see how inaction on Monarch's part for a period of six-to-eight weeks can be "prompt" or "immediate" as a matter of law. *Cf. Jarman,* 950 F.Supp. at 1379 (holding that a "five-month delay is clearly long enough to prevent [the defendant's] response from being characterized as immediate"). Accordingly, because Plaintiff has alleged sufficient facts to show that Monarch was her employer and that Monarch may be liable for the actions of Spence, the court will deny Monarch's motion to dismiss Plaintiff's Title VII claim for intentional discrimination on the basis of sex.

2. *Retaliation for Plaintiff's opposition to sexual harassment*

To establish a *prima facie* case that an employer has engaged in a retaliatory action in violation of Title VII, a plaintiff must show that (1) she engaged in a protected activity; (2) her employer took an adverse employment action against her; and (3) a sufficient causal connection exists between her protected activity and her employer's adverse employment action. *Ross v. Communications Satellite Corp.,* 759 F.2d 355 (4th Cir.1985).

■ Even if the court assumes that there was a causal connection between Plaintiff's complaints of sexual harassment to her superiors at Monarch and Mechanics and her removal from her temporary assignment at Mechanics, Plaintiff has still failed to allege facts which would suggest that Monarch took an adverse employment action against her. Inquiries into whether an employment action adversely affects an employee have "consistently focused on the question of whether there has been discrimination in what could be characterized as ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating." *Page v. Bolger,* 645 F.2d 227, 233 (4th Cir.) (discussing proper focus of a disparate treatment theory inquiry), *cert. denied,* 454 U.S. 892, 102 S.Ct. 388, 70 L.Ed.2d 206 (1981); *see also Hopkins v. Baltimore Gas & Elec. Co.,* 871 F.Supp. 822, 836 (D.Md.1994), *aff'd,* 77 F.3d 745 (4th Cir.), *cert. denied,* —— U.S. —— 117 S.Ct. 70, 136 L.Ed.2d 30 (1996) (applying *Page* standard to a Title VII retaliation claim).

Here, all that Plaintiff has alleged is that Monarch instructed her not to return to her assignment at Mechanics. In the unique circumstances present in this case, when dealing with a temporary employment agency, such an employment action, by itself, is not adverse. As Monarch notes, the act of ending a temporary assignment at a particular location is an expected, customary part of a temporary employee's job. Plaintiff nowhere alleges that Monarch discharged her, refused to assign her to other positions, only offered her assignments inferior to her position at Mechanics, or other similar circumstances which could constitute an adverse employment decision. Therefore, the court finds that Plaintiff has failed to state a claim for

retaliation in violation of Title ·VII and will grant Monarch's motion to dismiss as to this claim.

### B: State Law Claims Against Monarch and Mechanics

#### 1. Intentional discrimination and retaliatory discharge in violation of the NCEEPA against Monarch and Mechanics

■ Plaintiff makes two claims based upon violations of NCEEPA. First, Plaintiff asserts that Monarch and Mechanics have intentionally discriminated against her on the basis of her sex in violation of the NCEEPA. Second, Plaintiff claims that Monarch and Mechanics have wrongfully terminated her in retaliation for her opposition to sexual discrimination in violation of the NCEEPA. Monarch and Mechanics contend the NCEEPA does not provide Plaintiff with a private right of action.

The relevant portion of the NCEEPA states: "It is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on account of race, religion, color, national origin, sex or handicap by employers which regularly employ fifteen or more employees." N.C.Gen.Stat. § 143–422.2. As this court has previously noted, while this provision clearly pronounces the State's public policy, it provides no remedy for its violation. See McKinney v. Northern Telecom, Inc., No. 1:91CV00416, 1992 U.S. Dist. LEXIS 21948, at *7 (M.D.N.C. Sept. 24, 1992). Significantly, no North Carolina court, with the possible exception of the state trial court decision relied upon by Plaintiff, see Pl.'s Mem. in Opp'n to Mot. to Dismiss at 4, has found that the NCEEPA creates a private right of action. Instead, North Carolina courts have applied the NCEEPA only to common law wrongful discharge claims or in connection with other specific statutory remedies. See Hughes v. Bedsole, 48 F.3d 1376, 1383 n. 6 (4th Cir.) (analyzing the plain-

tiff's claim under the common law of wrongful discharge), cert. denied, 516 U.S. 870, 116 S.Ct. 190, 133 L.Ed.2d 126 (1995); North Carolina Dep't of Correction v. Gibson, 308 N.C. 131, 134, 301 S.E.2d 78, 81 (1983) (statutory remedy for state employees); North Carolina Dep't of Correction v. Hodge, 99 N.C.App. 602, 394 S.E.2d 285 (1990) (same). Absent a clear·indication from the courts or the legislature of North Carolina that a private right of action does exist under the NCEEPA, it would be inappropriate for a federal court to create a private right of action under the NCEEPA, and this court declines to do so. Accordingly, the court will dismiss Plaintiff's claims for intentional discrimination on the basis of her sex in violation of the NCEEPA and for retaliatory discharge in violation of the NCEEPA.[5]

#### 2. Wrongful or Bad Faith Discharge in Violation of Public Policy Against Monarch and Mechanics

■ Monarch and Mechanics have also moved to dismiss Plaintiff's claim for wrongful or· bad faith discharge in violation of North Carolina public policy. North Carolina follows an employee-at-will doctrine which generally provides that, in the absence of a contract establishing a definite term of employment, employers and employees may terminate their employment relationship at any time. See Still v. Lance, 279 N.C. 254, 259, 182 S.E.2d 403, 406 (1971). The employee-at-will doctrine, however, is subject to some narrow exceptions, including a public policy exception which provides that an employer cannot terminate an employee-at-will for a reason which is in violation of the public policy of North Carolina. See Amos v. Oakdale Knitting Co., 331 N.C. 348, 353, 416 S.E.2d 166, 169 (1992); Coman v. Thomas Mfg. Co., Inc., 325 N.C. 172, 175, 381 S.E.2d 445, 447 (1989). Although North Carolina courts have not clearly defined the boundaries of the public policy exception, the North Carolina Supreme Court has said, "At the very least public policy is violated when

---

**5.** Even if the NCEEPA did provide Plaintiff with a private right of action the court would still be compelled to dismiss her claim for retaliatory discharge in violation of the NCEEPA because

that statute does not express a public policy with respect to retaliation for opposition to any form of discriminatory practice. See discussion infra Part B.2.

an employee is fired in contravention of express public policy declarations contained in the North Carolina General Statutes." *Amos*, 331 N.C. at 353, 416 S.E.2d at 169.

■ Here, Plaintiff's claim for wrongful discharge in violation of public policy must fail because there is no North Carolina state law support for Plaintiff's assertion that a retaliatory discharge arising from complaints of sexual harassment violates the public policy of North Carolina. The NCEEPA does not express any public policy concerning retaliation for opposition to any form of discriminatory practice. *See Curran v. First Union Mortgage Corp.*, No. 5:95–CV–975–BR(3), 1997 U.S. Dist. LEXIS 4951, at *3 (E .D.N.C. Mar. 24, 1997); *Wray v. Northern Telecom, Inc.*, No. 1:93CV00120, 1995 U.S. Dist. LEXIS 2450, at *21 (M.D.N.C. Jan. 27, 1995); *Leach v. Northern Telecom, Inc.*, 141 F.R.D. 420, 426 (E.D.N.C.1991). Moreover, no North Carolina court has interpreted the NCEEPA to include a claim for discharge in retaliation for complaining about discriminatory employment practices.

Moving outside the NCEEPA, although the state legislature has enacted statutes prohibiting retaliation against employees, the protection afforded by these statutes is limited to the areas of law set forth therein. *See Wray*, 1995 U.S. Dist. LEXIS 2450, at *22 n. 1 (discussing N.C.Gen.Stat. § 95–241). As this court has consistently emphasized, extension of the public policy exception to include protection against retaliation for participation in other activities should come, if at all, from the North Carolina courts. *See Frye v. Volvo GM Heavy Truck Corp.*, No. 2:95CV639, 1996 U.S. Dist. LEXIS 16169, *7 (M.D.N.C. Oct. 1, 1996); *Wray*, 1995 U.S. Dist. LEXIS 2450 at *22.

■ Lastly, to the extent Plaintiff seeks to assert a claim for bad faith discharge, that claim is dismissed because North Carolina does not recognize a separate claim for bad faith discharge. *Amos*, 331 N.C. at 360, 416 S.E.2d at 173. Accordingly, the court will dismiss Plaintiff's claims against Monarch and Mechanics for wrongful or bad faith discharge in violation of public policy.

### 3. *Intentional or Negligent Infliction of Emotional Distress Against Mechanics*

■ Plaintiff also asserts a claim for intentional or negligent infliction of emotional distress against Mechanics. Under North Carolina law, in order to maintain an action for intentional infliction of emotional distress one must prove (1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress. *Dickens v. Puryear*, 302 N.C. 437, 276 S.E.2d 325 (1981).

■ In contrast, a claim for negligent infliction of emotional distress requires a plaintiff to establish that (1) the defendant engaged in negligent conduct; (2) it was reasonably foreseeable that such conduct would cause the plaintiff to suffer severe emotional distress; and (3) the conduct did in fact cause plaintiff to suffer severe emotional distress. *Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.*, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990).

Mechanics contends that the complaint fails to allege conduct sufficiently extreme and outrageous to state a claim for intentional infliction of emotional distress. Mechanics also argues that Plaintiff failed to properly allege the element of severe emotional distress which is common to both the intentional and the negligent infliction claims. Finally, in connection with both the intentional and the negligent infliction claims, Mechanics argues that it is not liable for the harm allegedly caused by Spence.

■ Extreme and outrageous conduct is " 'conduct [which] exceeds all bounds usually tolerated by a decent society.' " *Stanback v. Stanback*, 297 N.C. 181, 196, 254 S.E.2d 611, 622 (1979) (quoting Prosser, *Handbook of the Law of Torts* § 12 at 56 (4th ed.1971)). As a threshold matter, it is a question of law for the court to determine whether the conduct complained of may be reasonably found to be sufficiently outrageous to permit recovery. *Hogan v. Forsyth Country Club Co.*, 79 N.C.App. 483, 490, 340 S.E.2d 116, 121 (1986). If the conduct complained of could reasonably be regarded as extreme and outrageous, then the question of

whether the conduct was sufficiently extreme and outrageous as to result in liability is for the jury. *Id.*

Hogan involved allegations of sexual harassment closely analogous to those alleged by Plaintiff. *Id.* at 490, 340 S.E.2d at 121. In *Hogan*, a plaintiff alleged that she was subjected to non-consensual touching and sexually suggestive remarks, including instances in which the harasser would rub the front of his body against her. *Id.* The defendant employer argued that such conduct was not extreme and outrageous as a matter of law. *Id.* The North Carolina Court of Appeals disagreed, stating, "That [the plaintiff's] forecast of evidence shows sufficiently outrageous conduct directed toward her ... to entitle her to go to the jury strikes us as irrefutable." *Id.* at 491, 340 S.E.2d at 121. Here, Plaintiff alleges that Spence, despite her protests, repeatedly touched her legs and shoulders, rubbed the front of his body against her, and made sexually suggestive remarks to her. Such conduct, like the conduct in *Hogan*, is sufficiently extreme and outrageous to withstand a motion to dismiss.

Next, Mechanics argues that Plaintiff fails to state a claim for intentional or negligent infliction of emotional distress because Plaintiff has not alleged that the conduct in question caused her to suffer severe emotional distress. Mechanics is correct in noting that, to prevail on a claim for either intentional or negligent infliction of emotional distress, a plaintiff must establish that he or she suffered severe emotional distress. *See Waddle v. Sparks*, 331 N.C. 73, 83, 414 S.E.2d 22, 27 (1992). Severe emotional distress means "'any ... type of *severe and disabling* emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so.'" *Id.* (emphasis added by *Waddle*) (quoting *Johnson*, 327 N.C. at 304, 395 S.E.2d at 97). In contrast, a plaintiff who suffers from temporary anxiety or mere fright not amounting to severe emotional distress will not recover under a claim for intentional or negligent infliction of emotional distress. *Johnson*, 327 N.C. at 303–04, 395 S.E.2d at 97. Indeed, a plaintiff who is unable to allege facts and forecast medical evidence tending to show that he or she suffers from severe distress as defined in *Waddle* and *Johnson* is unlikely to survive a motion for summary judgment. *See Waddle*, 331 N.C. at 83, 414 S.E.2d at 27 (reinstating a trial court's decision granting defendant's motion for summary judgment due to plaintiff's failure to forecast medical documentation to support her claim of intentional infliction of emotional distress); *Harris by Tucker v. County of Forsyth*, 921 F.Supp. 325, 334 (M.D.N.C.1996) (granting defendant's motion for summary judgment as to plaintiff's claims for negligent and intentional infliction of emotional distress due to plaintiff's failure to forecast medical evidence to show that she suffered severe emotional distress).

Plaintiff alleges that the conduct of Spence made her "physically ill" and caused her to suffer "mental anguish and emotional and physical distress." Pl.'s Compl. ¶¶ 10, 13, 19. Whatever Plaintiff's burden may be at a future stage in this proceeding, at this preliminary juncture Plaintiff has sufficiently pled the element of suffering emotional distress for the purposes of both her intentional and negligent infliction of emotional distress claims. *See Johnson*, 327 N.C. at 306–07, 395 S.E.2d at 99.

Mechanics also argues that, even if Spence may be liable for Plaintiff's suffering of emotional distress, it cannot be liable because Spence's alleged actions were outside the scope of his employment. Plaintiff responds that she has alleged facts from which a jury could reasonably find that Mechanics ratified the acts of Spence. As a general rule, a principal's liability for the acts of his agents may arise in three situations: (1) when the agent's act is expressly authorized by the principal; (2) when the agent's act is committed within the scope of his employment in furtherance of the principal's business; or (3) when the agent's act is ratified by the principal. *Hogan*, 79 N.C.App. at 491, 340 S.E.2d at 121–22. In this case, Plaintiff does not allege that Mechanics expressly authorized Spence's conduct or that Spence's actions were within the scope of his employment. Thus, Mechanics' liability will

turn on whether Mechanics ratified Spence's actions.

 In order to establish an employer's ratification of an employee's wrongful acts a party must show that the employer had knowledge of all the material facts and circumstances relative to the improper conduct and that the employer by words or conduct displays an intention to ratify the conduct. *Hogan,* 79 N.C.App. at 492, 340 S.E.2d at 122. Plaintiff's complaint indicates that she reported Spence's behavior to Spence's supervisor in February 1996. Additionally, Plaintiff alleges Mechanics took no steps to investigate Plaintiff's complaint or to intervene or to take any precautions to protect Plaintiff from further harassment other than possibly speaking to Spence. Mechanics is correct in noting that the complaint is vague as to the nature and extent that Spence's alleged behavior continued after Plaintiff reported Spence. However, viewed in the light most favorable to Plaintiff, she does allege that the harassment continued throughout the course of her assignment which lasted until April 8, 1996, which suggests that Plaintiff is alleging that Spence's conduct continued notwithstanding her report. In this light, whether the alleged actions of Mechanics constitute a course of conduct signifying an intent to ratify Spence's behavior is a question for the jury. *See Hogan,* 79 N.C.App. at 493, 340 S.E.2d at 122 (where, on closely analogous facts, the North Carolina Court of Appeals held that it was inappropriate for the trial court to enter summary judgment on behalf of the defendant employer). Accordingly, the court will deny Mechanics' motion to dismiss Plaintiff's claim for intentional and/or negligent infliction of emotional distress.

## CONCLUSION

For the foregoing reasons, the court will (1) deny Monarch's motion to dismiss with respect to Plaintiff's claim for intentional discrimination on the basis of sex in violation of Title VII; (2) grant Monarch's motion to dismiss with respect to Plaintiff's claim for retaliatory discharge in violation of Title VII; (3) grant Monarch's and Mechanics' motions to dismiss with respect to Plaintiff's claims

for intentional discrimination on the basis of sex in violation of the NCEEPA, retaliatory discharge in violation of the NCEEPA, and wrongful and/or bad faith discharge in violation of North Carolina public policy, and (4) deny Mechanics' motion to dismiss with respect to Plaintiff's claim for intentional and/or negligent infliction of emotional distress.

An order in accordance with this memorandum opinion shall be entered contemporaneously herewith.

## ORDER

For the reasons set forth in the memorandum opinion contemporaneously herewith,

IT IS ORDERED that Monarch's motion to dismiss [Doc. # 11] with respect to Plaintiff's claim for intentional discrimination on the basis of sex in violation of Title VII is **DENIED;**

IT IS FURTHER ORDERED that Monarch's motion to dismiss [Doc. # 11] with respect to Plaintiff's claim for retaliatory discharge in violation of Title VII is **GRANTED;**

IT IS FURTHER ORDERED that Monarch's and Mechanics' motions to dismiss [Docs. # 11 & # 4] with respect to Plaintiff's claims for intentional discrimination on the basis of sex in violation of the NCEEPA, retaliatory discharge in violation of the NCEEPA, and wrongful and/or bad faith discharge in violation of North Carolina public policy are **GRANTED;** and

IT IS FURTHER ORDERED that Mechanics' motion to dismiss [Doc. # 4] with respect to Plaintiff's claim for intentional and/or negligent infliction of emotional distress is **DENIED.**