Connie H. ALLEN Plaintiff Pro Se,

v.

TYCO ELECTRONICS CORPORATION

and

KELLY SERVICES, INC. Defendants.

No. 1:02 CV 468.

United States District Court, M.D. North Carolina.

Dec. 2, 2003.

Connie H. Allen, Walnut Cove, NC, for Plaintiff.

Charles A. Edwards, Theresa Marie Sprain, Womble, Carlyle, Sandridge & Rice, Raleigh, NC, Lisa M. Drabik, Winston-Salem, NC, Martin N. Erwin, Smith Moore, L.L.P., Greensboro, NC, for Defendants.

## MEMORANDUM OPINION

TILLEY, Chief Judge.

The following motions are currently pending before this Court: Defendant Tyco's Motion to Amend its Answer [Doc. # 25]; Defendant Kelly's Motion for Summary Judgment [Doc # 23]; and Defendant Tyco's Motion for Summary Judgment [Doc. # 26]. For the reasons set forth below, both Motions for Summary Judgment will be GRANTED; and the Motion to Amend is thereby MOOT.

### I.

The facts in the light most favorable to the Plaintiff are as follows: In December 2000, Plaintiff Connie Allen, a White female, was hired by Kelly Services, Inc. ("Kelly"), a temporary staffing agency. Kelly provides temporary employees to

Tyco Electronics Corporation ("Tyco") to work in some of Tyco's facilities. According to the contract between Kelly and Tyco, Kelly remains the employer of any individuals placed at a Tyco facility. Accordingly, while Tyco may request that a particular Kelly employee be removed from its facility, Kelly maintains control over all discipline and/or termination of its employees.

In April 2001, Ms. Allen was assigned to work at Tyco's facility on Burgess Road in Greensboro, North Carolina. Kelly's on-site coordinator, Elaine Campbell Whaley, handled Ms. Allen's compensation, shift assignments, sick time, etc. Ms. Allen understood that Kelly, not Tyco, was her employer during her assignment at the Burgess Road Tyco facility.

Ms. Allen was assigned to the Assembly Department, where, as a temporary worker, her duties varied, but generally involved assembly of parts for shipment to customers. The Assembly Department was supervised by Group Leader Carrie Brown and Manufacturing Supervisor J.C. Coggins.

During Ms. Allen's time at the Tyco facility, she had many problems with her co-workers. Her deposition details several incidents involving Black *and* White co-workers that generally indicate that Ms. Allen was not well-liked by others in the Assembly Department. However, there is no evidence that any of these incidents were related to Ms. Allen's race, or in any way racially motivated. Instead, Ms. Allen attributes her co-workers' jealously and general dislike towards her as the cause of the incidents.

In November 2001, Ms. Allen was working with several other Kelly employees in assembling an air bag component. Karen Thomas was the "date coder," who labeled each part with a part number and date code. Ms. Allen was the "inspector," who determined whether the product was de-

fective, determined whether it was labeled properly, and was otherwise responsible for a complete inspection of the product. Tyco's inspection process required that the "inspector" review paperwork on each product prior to a visual inspection, Ms. Allen failed to do so. Ms. Allen admitted that it had been her responsibility to compare the codes on each product to the corresponding paperwork; however, she only looked at the parts to see whether the codes were legible.

At some point during the air bag component assembly process it was discovered that the product had been mislabeled. Ms. Brown notified Ms. Allen and Ms. Thomas of the mistake, and all three met with Mr. Coggins in his office. The problem was discussed, the employees learned that the mislabeled parts were worth $8,000, and Ms. Allen and Ms. Thomas were sent back to work. Later, Mr. Coggins learned that Ms. Allen was laughing about the mistake and had stated, "I'm glad I'm just a temp." At this point, Mr. Coggins contacted Kelly and requested that Ms. Allen be removed from her assignment at Tyco. Tyco's stated grounds for requesting her removal are the $8,000 in ruined parts and Ms. Allen's attitude after the mistake was made and discovered. According to Ms. Allen, other employees involved with the mistake were also laughing about it that day.

Ms. Whaley contacted Ms. Allen to inform her of her removal from the Burgess Road Tyco facility. In response, Ms. Allen asked if anybody else had been fired. Ms. Whaley said she could not discuss those facts. Ms. Allen then stated that other people on the line were just as responsible for the ruined parts, and that if others weren't fired also she would bring a discrimination claim. According to Ms. Whaley's deposition testimony, another employee, Beatrice Mbombo, was fired on November 16, 2001. Ms. Mbombo, a Black

female, was also fired for running bad parts.

Ms. Allen's file initially remained open at Kelly. Ms. Whaley called Ms. Allen on January 30, 2002 to offer her a first-shift position at a different Tyco facility. Ms. Allen did not accept the offer, but told Ms. Whaley she would call her back later. When Ms. Allen returned the call, Ms. Whaley informed her that the first-shift position had been filled, but that second– and third-shift positions were available. Ms. Allen declined these positions due to child care obligations. Another Kelly employee, "Nick," called Ms. Allen on February 20, 2002. Ms. Allen returned Nick's call, and left a message that she had a job for the rest of that week, but that she would be interested if a position was available after that. Ms. Allen did not hear back in response to this message.

On July 1, 2002, Ms. Allen moved from Greensboro to Stokes County. She informed Nick of her new telephone number on July 10, 2002, but never gave this number to Ms. Campbell or Shawn Williams, the individual Ms. Allen states was her contact at Kelly. A Tyco employee called Ms. Allen's old number on July 12, 2002. When she got a message that the phone number had been discontinued, Ms. Allen's file with Kelly was closed.

On December 13, 2001, Ms. Allen filed a charge with the Equal Employment Opportunity Commission (EEOC), alleging racial discrimination by Tyco and Kelly, and retaliation on the basis of race by Kelly. Her charge was closed with a "no cause" finding, and Ms. Allen filed a *pro se* Complaint against Tyco and Kelly in the Middle District of North Carolina [Doc. # 1] on June 13, 2002. The Complaint alleges violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e; the Americans with Disabilities Act (ADA); and the Age Discrimination in Employment Act (ADEA).[1]

On August 29, 2003, three motions were filed: (1) Defendant Kelly's Motion for Summary Judgment [Doc. # 23]; (2) Defendant Tyco's Motion to Amend its Answer [Doc. # 25]; and (3) Defendant Tyco's Motion for Summary Judgment [Doc. # 26]. The motions for summary judgment are considered below.

## II.

Both Defendants, Tyco and Kelly, filed a motion for summary judgment on August 29, 2003. Ms. Allen, however, did not respond within thirty days as required by Local Rule 56.1(d). As of this date, far beyond the thirty-day period, Ms. Allen has not filed any formal pleadings regarding either Defendant's Motion for Summary Judgment. Therefore, both motions are treated as uncontested. *Id.*

An uncontested motion for summary judgment is not automatically granted. *Campbell v. Hewitt, Coleman & Assocs., Inc.,* 21 F.3d 52, 55 (4th Cir.1994) (stating that although "the non-moving party runs a great risk by not responding [to a motion for summary judgment], such positive action is not required in all instances because the court still may only grant summary judgment if appropriate"); *Custer v. Pan Am. Life Ins. Co.,* 12 F.3d 410, 416 (4th Cir.1993). Instead, the court must determine whether the moving party is entitled to judgment as a matter of law. *Id.; Taliaferro v. Assocs. Corp. of N. Am.,* 112 F.Supp.2d 483, 486 n. 1 (D.S.C.1999). In making such a determination, the mov-

---

1. Ms. Allen included the ADA and ADEA in her Complaint, despite having included neither in her EEOC charge. However, Ms. Allen admitted in her deposition that this was a clerical error, and that she has no intention of pursuing an age or disability claim against either Defendant. Therefore, only race claims under Title VII are considered.

ing party's established facts are deemed uncontroverted. *Custer*, 12 F.3d at 416.

Summary judgment is proper only when there is no genuine issue of any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(e). The material facts are those identified by controlling law as essential elements of claims asserted by the parties. In other words, the materiality of a fact depends on whether the existence of the fact could cause a jury to reach different outcomes. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Cox v. County of Prince William*, 249 F.3d 295, 299 (4th Cir.2001). An issue is genuine as to such facts if the evidence is sufficient for a reasonable trier of fact to find in favor of the nonmoving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of its case as to which it would have the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Summary judgment requires a determination of the sufficiency of the evidence, not a weighing of the evidence. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. In essence, the analysis concerns "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505. Trial is unnecessary if "the facts are undisputed, or if disputed, the dispute is of no consequence to the dispositive question." *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1315–16 (4th Cir.1993).

## III.

■ First, the precise claims that Ms. Allen is bringing against the Defendants must be determined. Ms. Allen states in her Complaint, "I believe I have been discriminated against because of my race (White) in violation of Title VII of the Civil Rights Act of 1964, as amended." Several types of racial discrimination are actionable under Title VII, including discharge because of race, retaliation based upon protected activity, and creation of a hostile work environment based on race.

It appears that Ms. Allen has only properly pled a claim of discharge based on race. First, an EEOC charge defines the scope of a later civil suit. *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 962–63, (4th Cir.1996). Here, Ms. Allen did not allege retaliation or creation of a hostile work environment in her EEOC charge. Second, the only facts alleged in the Complaint reference the circumstances of Ms. Allen's discharge. No facts supporting a retaliation or hostile work environment claim were included. While Ms. Allen does not appear to have properly pled a retaliation or hostile work environment claim, they will nonetheless be considered briefly, along with the discharge based on race claim, in light of the more lenient standards generally afforded to *pro se* plaintiffs. Each Defendant's Motion for Summary Judgment as to the possible Title VII claims [2] is considered in turn below.

## A.

■ Defendant Tyco's Motion for Summary Judgment will be GRANTED as to all Title VII claims. Title VII discrimina-

---

**2.** A retaliation claim is considered as against Defendant Kelly only. Ms. Allen's relationship with Tyco ended immediately with the alleged adverse employment action (her discharge). Therefore, a retaliation claim against Tyco is not possible. The possible hostile work environment and discharge claims are considered as against both defendants.

tion claims may be brought only against an "employer." A plaintiff must show "that the defendant meets the statutory definition of employer [3] and that an employer-employee relationship exists between herself and the defendant." *Mullis v. Mechanics & Farmers Bank,* 994 F.Supp. 680, 684 (M.D.N.C.1997).

■ Under Fourth Circuit precedent, whether an employer-employee relationship exists should be determined through reference to common-law agency doctrine. *Id.* (citations omitted). Specifically, employees placed in a work position through a temporary agency are considered "loaned servants." *Id.* Under the loaned-servant doctrine, an employment relationship is created between the special employer and the temporary employee only when the special employer controls the means and manner of the temporary employee's work. *Id.*

■ Here, Defendant Tyco has provided facts suggesting that it did not control the means and manner of Ms. Allen's work at it's Burgess Road facility. Ms. Allen understood that she was an employee of Kelly, not Tyco. Tyco's contract with Kelly specified that Tyco had only the power to request removal of Ms. Allen from a particular facility; it had no power to hire or fire her. In addition, the responsibility of answering Ms. Allen's questions and serving as a general contact person fell to a Kelly employee, Ms. Whaley, and not to Tyco or any of its employees. Because Tyco's Motion for Summary Judgment is uncontested, and Ms. Allen has provided no facts contradicting those provided by Tyco, it will be considered uncontroverted that Tyco did not control the means and manner of Ms. Allen's position, Therefore, as a matter of law, Tyco was not an "em-

ployer" of Ms. Allen within the meaning of Title VII. As there is no genuine issue of material fact as to this issue, Tyco's Motion for Summary Judgment will be GRANTED in full.

### B.

Defendant Kelly's Motion for Summary Judgment will also be GRANTED in full. Each of the three possible Title VII claims is considered below.

### 1.

■ Ms. Allen has provided no direct evidence that she was discharged because of her race. Therefore, Ms. Allen's Title VII discharge claim must proceed under the judicially created proof scheme established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under the *McDonnell Douglas* test, if the plaintiff establishes a prima facie case, she raises a presumption of discrimination. However, if the employer articulates a legitimate nondiscriminatory reason for terminating the plaintiff, the presumption of discrimination drops from the case and the plaintiff bears the burden of demonstrating that the defendant's explanation is pretextual. *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Runnebaum v. NationsBank of Md.,* 123 F.3d 156, 164 (4th Cir.1997) (en banc). The prima facie case, when combined with a rejection of the defendant's proffered reason for termination, may permit the trier-of-fact to infer the ultimate fact of intentional discrimination. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

---

**3.** Title VII defines "employer" to include "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year and any agent of such person." 42 U.S.C. §§ 2000e(b).

■ To establish a prima facie case of racial discrimination, the plaintiff must show that: (1) she is a member of a protected class; (2) her job performance was satisfactory; (3) she was fired in spite of her satisfactory performance; and (4) the position was filled by a similarly qualified applicant outside the protected class. *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 608 (4th Cir.1999). Further, the plaintiff at all times bears the ultimate burden of proving discrimination. *See Runnebaum*, 123 F.3d at 164. Therefore, to avoid summary judgment, Ms. Allen must point to facts on the record that are sufficient to create a genuine issue of material fact as each element that would be required as part of her prima facie case. Ms. Allen has failed to do so. She has not, for example, shown that she was performing her job satisfactorily, or that her previous position was filled by an individual outside of the protected class. Therefore, Kelly's Motion for Summary Judgment will be GRANTED as to the discharge claim under Title VII.

2.

■ In her deposition Ms. Allen claims that Kelly retaliated against her, in violation of Title VII, by not offering her other positions after Ms. Allen threatened a discrimination suit in her conversation with Ms. Whaley. To prove a prima facie case of retaliation under Title VII, the plaintiff must show that she engaged in protected activity, that the employer took adverse action against her, and that there is a causal connection between the protected activity and the adverse action. *Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 271 (4th Cir.2001). Ms. Allen has not provided sufficient evidence upon which a jury could base a finding of retaliation. There is no evidence that the alleged adverse employment action even occurred. Ms. Allen claims that Kelly retaliated by not offering her other jobs.

However, it is undisputed that Kelly offered Ms. Allen several jobs after her work at the Tyco Burgess Road facility ended. Ms. Allen declined these job offers. In short, there is no genuine issue of material fact, and Kelly's Motion for Summary Judgment as to a Title VII retaliation claim will be GRANTED.

3.

■ In her deposition, Ms. Allen suggests that the Defendants created a hostile work environment in violation of Title VII. To state a hostile work environment claim a plaintiff must show that (1) the harassment was unwelcome; (2) the harassment was based on race; (3) the harassment was sufficiently severe or pervasive as to alter the conditions of her employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer. *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183–84 (4th Cir.2001).

■ Ms. Allen, in her deposition testimony, has identified several instances of disagreement and conflict with her co-workers which she claims were harassing. However, Ms. Allen has provided no evidence that any of these incidents were racially motivated. In addition, even if the incidents had been racially motivated, there is no evidence that they were "sufficiently severe or pervasive as to alter the conditions of her employment and create an abusive atmosphere." Therefore, Kelly's Motion for Summary Judgment as to a Title VII hostile work environment claim will be GRANTED.

IV.

In conclusion, Ms. Allen has not contested either Defendant's Motion for Summary Judgment. Therefore, there are no genuine issues of material fact. Because each Defendant has shown that it is entitled to judgment as a matter of law, both Motions

for Summary Judgment will be GRANTED. As such, Defendant Tyco's Motion to Amend will be DENIED as being MOOT.

## JUDGMENT

For the reasons set forth in a contemporaneously filed Memorandum Opinion, both Defendant Tyco Electronics Corporation's Motion for Summary Judgment [Doc. # 26] and Defendant Kelly Services, Inc.'s Motion for Summary Judgment [Doc. # 23] are GRANTED. Defendant Tyco's Motion to Amend its Answer [Doc. # 25] is, therefore, DENIED as being MOOT.