Esther M. McKIVER, Plaintiff,

v.

GENERAL ELECTRIC COMPANY, Defendant.

No. Civ. 4:96CV409.

United States District Court, M.D. North Carolina, Salisbury Division.

Dec. 4, 1997.

Romallus O. Murphy, Greensboro, NC, Esther M. McKiver, China Grove, NC, for Plaintiff.

Jill S. Stricklin, John J. Doyle, Jr., Constangy, Brooks & Smith, Winston–Salem, NC, for Defendant.

### ORDER and JUDGMENT

BULLOCK, Chief Judge.

For the reasons set forth in the memorandum opinion filed contemporaneously herewith,

IT IS ORDERED AND ADJUDGED that Defendant's motion for summary judgment [Doc. # 21] be, and the same hereby is, **GRANTED,** and this action is **DISMISSED** with prejudice.

### MEMORANDUM OPINION

Plaintiff Esther M. McKiver has filed claims against Defendant General Electric

Company ("GE") alleging racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and disparate treatment on the basis of disability in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*[1] Defendant has moved for summary judgment on all claims. For the reasons set forth hereafter, Defendant's motion will be granted with respect to all claims.

## FACTS

Plaintiff is a black female who began work for GE on September 15, 1975, when the company opened a new manufacturing facility in Salisbury, North Carolina. (McKiver Dep. at 23, 29–30). From 1985 until her termination, Plaintiff worked as an assembler of lighted panel board. (*Id.* at 45–47).

On June 29, 1993, Plaintiff suffered a neck and shoulder injury (subsequently diagnosed as a cervical sprain) while lifting shields at work. (*Id.* at 99; Fior Aff. ¶ 3). GE's policies and procedures required each employee sustaining a work-related accident to report the incident immediately to the human resources department. If the employee had to miss work the company required that she (1) provide medical documentation to the human resources department, (2) keep the company informed of her status, and (3) promptly notify the company when released to return to work. (McKiver Dep. at 90–91, 95–96). Following this injury, Plaintiff properly reported the accident and sought treatment from Dr. Mobley of Pro–Med. Dr. Mobley took her out of work for one week until July 7, 1993. (*Id.* at 100–01, Ex. 27; Fior Aff. ¶ 4). Continuing pain brought Plaintiff back to Dr. Mobley on September 14, 1993. Dr. Mobley placed Plaintiff on restricted duties with a fifteen-pound limitation on pushing, pulling, and lifting, and a prohibition on hammering. (McKiver Dep. at 102–04, Ex. 28; Fior Aff. ¶ 5).

One week later, Plaintiff returned to Pro–Med and was referred to Dr. Charles Lockert. (McKiver Dep. at 104). Dr. Lockert examined Plaintiff on September 23, 1993, and took her out of work until October 23,

1993. (*Id.* at 104–09). On October 23, 1993, Dr. Lockert released Plaintiff from his care.

Until this time Plaintiff had followed procedure in keeping the company informed of her status and providing supporting documentation. Between October 22, 1993, and February 10, 1994, however, Plaintiff did not call or correspond with GE in any way. (*Id.* at 122–23, 125; Fior Aff. ¶ 6). Without notifying GE, Plaintiff began seeing her own physician, Dr. David Kelly. (McKiver Dep. at 113–14, 117). Dr. Kelly began treating Plaintiff for her cervical strain and subsequently diagnosed a lumbar strain as well. No record exists that he contacted GE at any time. (*Id.* at 122–23, 125; Fior Aff. ¶ 6). It is undisputed that Plaintiff's failure to apprise GE of her status was contrary to company policy.

On February 9, 1994, Dr. Kelly examined Plaintiff and released her to return to work. (McKiver Dep. at 137). Dr. Lockert examined Plaintiff the following day and released her to return to her regular job on Friday, February 11, 1994. (*Id.* at 138–39). GE's human resource manager Rick Fior telephoned Plaintiff on February 10, 1994, and requested that she come in and meet with him and supervisor Vince DeFazio the following day. (*Id.* at 141; Fior Aff. ¶ 8). Plaintiff did not report to work or meet with her supervisors as requested. Plaintiff alleges that they had agreed that she need not travel due to inclement weather. (*Id.* at 140–42). GE argues that Plaintiff simply refused to appear. (Fior Aff. ¶ 8).

On the next business day (February 15, 1994), Fior again spoke with Plaintiff over the telephone and asked that Plaintiff report to work and meet with him and DeFazio. (McKiver Dep. at 142–43; Fior Aff. ¶ 9). Plaintiff refused to meet with Fior unless counsel was present and did not report. (McKiver Dep. at 143–44; Fior Aff. ¶ 9).

On February 17, 1994, DeFazio sent Plaintiff a letter informing her that her employment was terminated due to her "poor attendance and failure to keep [GE] informed of [her] status or provide documentation of

---

1. Plaintiff's complaint also alleged that GE discriminated against her on the basis of sex. Because she did not present this claim of sex dis-

crimination to the EEOC, it will be dismissed. *See* 42 U.S.C. § 2000e–5.

why [she was] unable to work." (McKiver Dep. at 144–45, Ex. 38; Fior Aff. ¶ 10). DeFazio cited Plaintiff's failure to return to work after her release from Dr. Lockert's care on October 22, 1993; her failure to comply with Fior's request for doctor's slips to document her status; her refusal to report to work on February 11, 1994, after release from Dr. Kelly; and her refusal to discuss her status with Fior and DeFazio on February 10 or 15, 1994. Plaintiff filed a charge of racial discrimination and discrimination on the basis of disability with the EEOC. After receiving notice of her right to sue, Plaintiff timely filed this action.

## DISCUSSION

Summary judgment must be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party bears the burden of persuasion on the relevant issues. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party may survive a motion for summary judgment by producing "evidence from which a jury might return a verdict in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When the motion is supported by affidavits, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *see also Cray Communications v. Novatel Computer Sys., Inc.,* 33 F.3d 390, 393–94 (4th Cir.1994) (moving party on summary judgment motion can simply argue the absence of evidence by which the non-movant could prove her case), *cert. denied,* 513 U.S. 1191, 115 S.Ct. 1254, 131 L.Ed.2d 135 (1995). In considering the evidence, all reasonable inferences are to be drawn in favor of the non-moving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [factfinder] could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. 2505.

Lacking direct evidence of discrimination, Plaintiff must satisfy the burden-shifting analysis established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to prevail on her Title VII and ADA claims. First, Plaintiff must establish by a preponderance of the evidence a *prima facie* case of discrimination. If Plaintiff meets the low burden of establishing a *prima facie* case by a preponderance of the evidence, an inference of discrimination arises, and the burden of production shifts to Defendant to offer legitimate, non-discriminatory reasons for the allegedly discriminatory acts. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If the employer meets its burden of articulating a legitimate, non-discriminatory reason for the adverse employment action, the *McDonnell Douglas* presumption disappears. *Id.* at 255 n. 10, 101 S.Ct. 1089. Thus, the plaintiff bears the burden of persuasion to prove that the reason articulated by the employer was not truly the reason for the adverse action and that the employer engaged in intentional discrimination against the plaintiff. *Hicks,* 509 U.S. at 511, 113 S.Ct. 2742. Defendant is entitled to summary judgment if Plaintiff fails to establish a *prima facie* case of discrimination or fails to raise a genuine factual dispute concerning the employer's legitimate and non-discriminatory explanation for the alleged discriminatory act. *Henson v. Liggett Group, Inc.,* 61 F.3d 270, 274 (4th Cir.1995).

■ To establish a *prima facie* case of racial discrimination under *McDonnell Douglas,* Plaintiff must show that: (1) she is a member of a protected class; (2) she suffered some adverse employment action; (3) at the time of the adverse employment action, she was performing at a level that met her employer's legitimate expectations; and (4) the adverse employment action occurred under circumstances that raised an inference of unlawful discrimination. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

■ Plaintiff does not carry her burden of making out a *prima facie* case of racial discrimination. Plaintiff has no evidence to show that she performed her job satisfactorily or that GE hired or retained applicants who failed to comply with company policy and procedures on workplace injuries. It is undisputed that Plaintiff failed to follow com-

pany policy and keep the human resources department informed of her status. Moreover, Plaintiff's evaluations demonstrate a history of poor attendance throughout her employment with GE. (McKiver Dep. at 42, Ex. 6; 44–45, 48, Ex. 8; 51–54, Ex. 10; 53–55, Ex. 11; 70–72, Ex. 17; 74–77, Ex.19). The company relied upon these facts in justifying its decision to terminate her. (*Id.* at 144–45, Ex.38).

Plaintiff has no evidence to support the inference of racial discrimination. She claims to have been advised by some unknown declarant that white employees Hugh Martin and Lois Safrit were not terminated although they were out of work for injuries. (*Id.* at 161–64). Because this unknown declarant's statement is inadmissible hearsay and Plaintiff has no personal knowledge of the circumstances in which Martin or Safrit were injured or excused from work, the court will not consider this statement as evidence of racial discrimination. *See* Fed.R.Evid. 802; *cf. Cook v. CSX Transp. Corp.*, 988 F.2d 507, 512 (4th Cir.1993) (holding that an inference of discriminatory discipline cannot be established by relying on factual circumstances taken out of context).

Plaintiff also offers her belief that Fior would have spoken with her in the presence of her attorney had she been white. (McKiver Dep. at 167–68). Plaintiff testified at her deposition, however, that she knows of no other employee who refused to meet with Fior without an attorney present or who had an attorney present while meeting with Fior. (*Id.*). Although Plaintiff may believe that she is a victim of racial discrimination, such unsupported beliefs are irrelevant.' *See Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456–57 (4th Cir.1989). For these reasons, Defendant is entitled to summary judgment on Plaintiff's Title VII claim.[2]

■ Plaintiff also complains that GE's failure to accommodate her June 1993 injury violates the Americans with Disabilities Act (ADA). The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). To establish a *prima facie* case under the ADA, Plaintiff must show (1) that she had a disability; (2) that she is otherwise qualified for the job in question; and (3) that she was discharged solely because of her disability. *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir.1997).

■ Plaintiff cannot prevail on her claim that Defendant did not accommodate her injury because she has not established that this injury constituted a "disability." Under the ADA, the term "disability" means: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Plaintiff's failure-to-accommodate claim must come under Subsection (A).

To qualify as having a disability under Subsection (A), Plaintiff must show that her injury is a "physical or mental impairment" that "substantially limited" one of her "major life activities." Assuming *arguendo* that Plaintiff's cervical and lumbar sprains constitute a physical impairment and that working is a major life activity, the question turns on whether Plaintiff's back injury "substantially limited" her ability to work. *Halperin* at 198. The term "substantially limits" is defined by 29 C.F.R. § 1630.2(j).[3] That section lists three factors to consider in determining whether an individual is substantially limited in a major life activity: "The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2). Even when viewed in the light most favorable to Plaintiff, the evi-

---

**2.** Plaintiff also claimed in her deposition that Defendant discriminated against her on the basis of race by failing to accommodate her carpal tunnel injury in 1987 and 1988 and foot injury in 1992. (McKiver Dep. at 164–67). Because these alleged acts occurred more than 180 days prior to Plaintiff's initiation of her EEOC charge, they are time-barred. *See* 42 U.S.C. § 2000e–5(e)(1).

**3.** The EEOC guidelines provide guidance to courts and litigants and are not controlling authority. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

dence does not support a finding that her cervical and lumbar sprains were either of sufficient duration or severity so as to limit substantially her ability to work at the time that Plaintiff contends that GE should have provided reasonable accommodation. Pro-Med's July 1993 return-to-work statement listed *no restrictions and did not indicate that the cervical sprain was a permanent condition.'* (McKiver Dep. at 173–74, Ex.27). Pro-Med's September 1993 return-to-work statement contained minimal restrictions and requested light duty work "if available." (*Id.* at 103, Ex.28). The fifteen-pound lifting restriction, however, did not significantly restrict her ability to work. *See Halperin,* at 200 (twenty-pound lifting limitation held not to constitute a significant restriction). Furthermore, Plaintiff offers no evidence to show that her lifting restriction significantly limited her ability to perform a broad range of jobs. *See* 29 C.F.R. § 1630.2(j)(3) (when the major life activity is working, a substantial limitation entails an inability to perform either a class of jobs or a broad range of jobs in various classes). Therefore, Plaintiff's complaint that GE did not offer her reasonable accommodation upon returning to work in 993 is insufficient to establish a *prima facie* case of discrimination under the ADA. *See id.*

■ Similarly, Plaintiff cannot recover under the ADA for her termination in February 1994. The ADA protects only "qualified individuals with a disability," *i.e.,* those who can perform the "essential functions" of the job, "with or without reasonable accommodation." 42 U.S.C. § 12111(8). However, plaintiffs who plead total incapacity to work in order to claim worker's compensation or insurance benefits generally are estopped from thereafter contending under the ADA that they can perform essential job functions after all. *See Reigel v. Kaiser Found. Health Plan of North Carolina,* 859 F.Supp. 963, 969–70 (E.D.N.C.1994). In this case, Plaintiff testified that she has been permanently and totally disabled and unable to work since February 1994. (McKiver Dep. at 18–21, 154–55, 169). Moreover, Plaintiff represented to the Social Security Adminis-

tration that as of September 23, 1993, she was permanently and totally disabled and unable to work. (*Id.* at 21; Mot. to Withdraw as Pl.'s Counsel [Doc. #19] Ex. A).[4] Because her own admissions demonstrate that she could not or would not perform her job with or without reasonable accommodation, Plaintiff cannot establish that she was "otherwise qualified for the job" and thus her claim for discriminatory termination under the ADA fails as a matter of law.

## CONCLUSION

Plaintiff has failed to establish a *prima facie* case of racial discrimination. She also fails to establish either that her cervical or lumbar sprains qualify as a "disability" or that she was a "qualified individual" with a disability within the meaning of the ADA. The court will thus grant summary judgment for Defendant on all claims.

An order and judgment in accordance with this memorandum opinion shall be entered contemporaneously herewith.

---

**4.** The statements made by Plaintiff's attorney in a letter to her explaining why her ADA claim lacks merit are admissible under Fed.R.Evid. 801(d)(2). *See United States v. Gregory,* 871 F.2d 1239, 1243 (4th Cir.1989), *cert. denied,* 493 U.S. 1020, 110 S.Ct. 720, 107 L.Ed.2d 740 (1990).