Brenda ROYSTER, Plaintiff,

v.

COSTCO WHOLESALE CORPORATION, a.k.a. COSTCO CORPORATION, Defendant.

No. 1:03 CV 000579.

United States District Court, M.D. North Carolina.

March 28, 2005.

Angela Newell Gray, Gray Newell Johnson & Blackmon, LLP, Winston–Salem, NC, for Plaintiff.

J. Nathan Duggins, III, Tuggle Duggins & Meschan, P.A., Greensboro, NC, Steven Michael Staes, Thomas J. Wybenga, Seyfarth Shaw, Atlanta, GA, for Defendant.

### ORDER AND JUDGMENT

BEATY, District Judge.

On September 3, 2004, the United States Magistrate Judge's Recommendation [Doc-ument # 24] was filed and notice was served on the parties pursuant to 28 U.S.C. § 636(b). Plaintiff filed timely Objections. The Court has now reviewed the Objections and the portions of the Magistrate Judge's report to which objection was made, and the Court has made a *de novo* determination which is in accord with the Magistrate Judge's report. The Magistrate Judge's Recommendation [Document # 24] is therefore affirmed and adopted.

IT IS THEREFORE ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment [Document # 16] is GRANTED, and this case is DISMISSED WITH PREJUDICE.

### RECOMMENDATION AND ORDER OF UNITED STATES MAGISTRATE JUDGE

DIXON, United States Magistrate Judge.

This matter is before this court on Defendant's motion for summary judgment (docket no. 16). Plaintiff has responded (docket no. 18) and Defendant has replied (docket no. 19). In this posture, this matter is ripe for disposition. For the reasons stated below, it will be recommended that the summary judgment motion be granted.

### Background

#### A. Procedural Background:

Plaintiff filed a complaint on June 19, 2003, alleging two claims: first, a state law claim that "[t]he Defendant Company is liable to the Plaintiff for the Negligent Supervision and Retention of employee-Defendant, Pat Spangler;" and second, a federal claim that "[t]he Defendant Company is liable to the Plaintiff for subjecting her to race discrimination, failure to hire, demotion and racial harassment, including a racially Hostile Work Environment and

for disparate treatment in the terms and conditions of her employment" in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e–2(a)(1)), 42 U.S.C § 1981 and N.C.GEN.STAT. § 143–422.2. Plaintiff requests declaratory judgment, injunctive relief, compensatory and punitive damages, back pay, a jury trial, and other appropriate relief.

In the motion for summary judgment, filed May 12, 2004, Defendant argues that there are no genuine issues of material fact as to any of Plaintiff's claims. Plaintiff responded on June 14, 2004, opposing the motion. Defendant replied on July 2, 2004.

## B. Factual Background:

Plaintiff, who is African–American, was hired by Costco Wholesale Corporation (Costco) in November 2000 as a part-time food service attendant in the Food Court at the Costco location in Durham. Plaintiff worked evenings and weekends earning $10 an hour at the beginning. She was not able to work during the day because of her primary job with Duke University. Pl. Dep. Vol 1, pp. 13–15 (attached to Motion for Summary Judgment). After completing a 90–day probationary period, Plaintiff's hourly rate was increased to $10.25 per hour on or after February 18, 2001. Pl. Dep. Vol 1, pp. 18, 19, 21–23 (attached to Motion for Summary Judgment).

On September 10, 2001, Plaintiff filed a claim with the Durham Human Relations Commission. Plaintiff's Charge of Discrimination was later filed with the Equal Employment Opportunity Commission, which issued a right-to-sue letter on March 21, 2003. Plaintiff's Charge of Discrimination alleges discrimination in two specific incidents. See Charge of Discrimination, Ex. 8 (attached to Defendant's Motion for Summary Judgment). She complains first about her request to be transferred to a

position working as a Gas Station Attendant, and second about her request for vacation time. After a general discussion of Plaintiff's performance, the factual background for each of these two incidents will be discussed.

### 1. Plaintiff's Performance

Plaintiff's time on the food court staff was not without incident. She was issued counseling notices and requested, and was granted, a transfer. Nevertheless, she has worked primarily in the food court under the supervision of Pat Spangler, Food Court Manager. Several of the incidents are outlined here.

Less than two weeks after the end of her probationary period, Plaintiff was issued her first counseling notice for performing three voids in a row without the approval required by company policy. Pl. Dep. Vol. 1, pp. 23–28; Pl. Dep. Vol. 1, Ex. 3 (attached to Motion for Summary Judgment). Plaintiff did not sign the counseling notice, stating instead that she was unaware of Costco's procedures for handling voids. Pl. Dep. Vol. 1, pp. 24, 28; Pl. Dep. Vol. 1, Ex. 3 (attached to Motion for Summary Judgment).

On May 27, 2001, Plaintiff was issued another counseling notice for wearing jewelry while handling food in violation of Costco's policy. Pl. Dep. Vol. 1, pp. 28–31; Pl. Dep. Vol. 1, Ex. 4 (attached to Motion for Summary Judgment). She again refused to sign the notice, this time stating that her supervisor had also violated the policy by wearing a wedding band. Pl. Dep. Vol. 1, pp. 28–31 (attached to Motion for Summary Judgment). Plaintiff complained to various managers about this incident, claiming that Spangler was harassing and "nitpicking," but she did not indicate that this was based on her race. Pl. Dep. Vol. 1, pp. 30–31; Pl. Dep. Vol 2,

pp. 37–41 (attached to Motion for Summary Judgment).

Plaintiff also complained that Spangler referred to Food Court employees as "you people" or "you guys," yet again, it is not obvious that this had anything to do with race, as some of the food court employees were white. Pl. Dep. Vol. 2, pp. 36–37, 43, 55–56, 90–91 (attached to Motion for Summary Judgment). Plaintiff asked to be transferred to another department because of Spangler's management style. Pl. Dep. Vol. 1, pp. 31–33, 42; Pl. Dep. Vol. 2, pp. 38–39 (attached to Motion for Summary Judgment). Keith Napolitano, Assistant Warehouse Manager, offered Plaintiff a position as a Clothing Stocker which she accepted for a brief time. Pl. Dep. Vol. 1, pp. 31–32, 37–38, 153; Pl. Dep. Vol. 2, p. 71 (attached to Motion for Summary Judgment). Plaintiff, however, requested a transfer back to the food court under Spangler's supervision because she did not want to work until midnight on a weekend night. Pl. Dep. Vol. 1, pp. 31–32, 34–36, 38, 153; Pl. Dep. Vol. 2, pp. 71–74; Pl. Dep. Vol 1, Ex. 1 (attached to Motion for Summary Judgment).

Finally, in August 2001, Spangler gave Plaintiff a performance evaluation that indicated that Plaintiff needed to improve quality of work, judgment, initiative, and communication skills. Pl. Dep. Vol. 1, p. 46; Pl. Dep. Vol. 1, Ex. 6 (attached to Motion for Summary Judgment). On the evaluation, Spangler indicated—among other things—that Plaintiff had refused to acknowledge her supervisors, and that Plaintiff lacked a sense of urgency, was apathetic, and had received a member complaint for rudeness. Pl. Dep. Vol. 1,

pp. 46, 49–51, 53; Pl. Dep. Vol. 1, Ex. 6 (attached to Motion for Summary Judgment). Plaintiff always seemed to feel that she was being unfairly singled out. Even in the deposition, Plaintiff demonstrated that she did not agree with this evaluation. Pl. Dep. Vol. 1, pp. 46, 49–51, 53 (attached to Motion for Summary Judgment).

### 2. Plaintiff's application to be transferred to the Gas Station

After working primarily in the food court under Spangler, Plaintiff requested a job transfer to the position of Gas Station Attendant in July 2001.[1] A notice was posted at Costco on July 23, 2001, indicating a job opening for a Gas Station Attendant, a position that was in the same job and pay classification as Plaintiff's job in the food court. Pl. Dep. Vol. 1 p. 143; Pl. Dep. Vol. 1, Ex. 9–10 (attached to Motion for Summary Judgment). Although the notice indicated that applicants must be available to work between the hours of 5:45 a.m. and 10:00 p.m. Pl. Dep. Vol. 1, p. 124; Pl. Dep. Vol. 1, Ex. 9; McBroom Dep. pp. 9–10; McBroom Dep. Ex. 1 (attached to Motion for Summary Judgment), Plaintiff apparently thought that an applicant must only be available to work in the evening, between 5:45 p.m. and 10:00 p.m. Pl. Dep. Vol. 1, pp. 123–24; McBroom Dep. pp. 8, 12–16 (attached to Motion for Summary Judgment). McBroom recommended to Napolitano and Warehouse Manager Brian Minion that Plaintiff was the most qualified person for the position and they approved her transfer. McBroom Dep. pp. 8, 12–16 (attached to Motion for Summary Judgment). (Defendants also cite to the Minion Dep. pp. 40,

---

1. Plaintiff's own memorandum in support of her opposition to Defendant's motion for summary judgment indicates that Plaintiff applied for this position in November 2002 rather than in July 2001. Nevertheless, other evidence including the job opening posting included as Exhibit 1 on Bill McBroom's deposition indicate that the correct time-frame is July 2001. The job posting is dated July 23, 2001.

48 for this proposition, but these pages were not actually included in the record.)

Plaintiff received a schedule that required her to work during the day. Pl. Dep. Vol. 1, pp. 125–26; McBroom Dep. pp. 8, 14 (attached to Motion for Summary Judgment). Plaintiff could not fulfill these obligations because of her day job at Duke University. She therefore contacted McBroom to discuss her schedule. Pl. Dep. Vol. 1, pp. 125–27; McBroom Dep. pp. 17 (attached to Motion for Summary Judgment). McBroom responded that he needed someone who was available during the day as well as the evening. Pl. Dep. Vol. 1, pp. 125–27, 132; Pl. Dep. Vol. 2, p. 27; McBroom Dep. pp. 17–18 (attached to Motion for Summary Judgment). Therefore, Plaintiff was transferred back to the food court on July 30, 2001. Pl. Dep. Vol. 1, p. 128, Pl. Dep. Vol. 2, p. 102; Minion Decl. ¶ 6 (attached to Motion for Summary Judgment).

At this point Plaintiff's pursuit of the gas station position was over and the search for a new candidate began. It is clear that, at that time, it was not in McBroom's interest to have an attendant who was not available for scheduling during the entire time that the gas station was open each day. There was no other candidate waiting in the wings and, in fact, McBroom was instructed to begin looking for an external applicant. McBroom Dep. pp. 17–19; Minion Decl. ¶ 9–10 (attached to Motion for Summary Judgment).

Before the search for another candidate was complete, Minion told McBroom that he was transferring a current employee, Bruce McCoy (a white male) to the Gas Station Attendant position. Minion Dec. ¶ 14. Although McCoy had the same problems with availability that Plaintiff had, Minion felt that they needed to accommodate McCoy because he had a disability that was making it impossible for him to continue working in his current position. Pl. Dep. Vol. 2, p. 30; Minion Dep. pp. 60–61; Minion Decl. ¶ 12 (attached to Motion for Summary Judgment). McBroom did not agree with Minion's decision to transfer McCoy—it clearly put him in the same scheduling situation as he had been in with Plaintiff. McBroom Dep. pp. 19–21, 23 (attached to Motion for Summary Judgment). Nevertheless, he went along with Minion's request. McBroom Dep. pp. 19–21, 23, Minion Decl. ¶¶ 14–15 (attached to Motion for Summary Judgment). Minion attests that he was aware of neither McCoy's disability nor his need for accommodation until after Plaintiff had transferred back to the food court Minion Decl. ¶ 13 (attached to Motion for Summary Judgment (docket no. 16)), and that race was not a factor in either decision (*id.* at ¶ 16).

### 3. *Plaintiff's request for vacation*

Costco employees must be continuously employed for one year before they become eligible for paid vacation. Pl. Dep. Vol. 1, pp. 158–59; Pl. Dep. Vol. 1. Ex. 11 (attached to Motion for Summary Judgment). Defendant emphasizes this policy and Plaintiff's ineligibility during the time that Plaintiff made vacation requests. *See* Memorandum in support of Motion for Summary Judgment, pp. 2, 4–6. There is, however, no contention that Plaintiff was requesting paid, rather than unpaid, leave; therefore, emphasis on her eligibility is insignificant.

This court notes that Plaintiff fails entirely to set out a factual background for her complaints about vacation time in her Memorandum in opposition to the motion. Nevertheless, this court fleshes out some of that background. Plaintiff complains specifically that she "was told that she would have to work extra hours in order to get the [requested vacation] time off.

However, Jeff, [a white male], requested four days off and got them without having to work extra hours." Charge of Discrimination, Ex. 8 (attached to Motion for Summary Judgment).

Plaintiff's claim does not match the record of hours worked. The evidence demonstrates that, regarding the vacation time in question, Plaintiff worked only 22.39 hours during the week before her vacation and 25.28 hours during the week after her vacation. Spangler Decl. ¶ 19; Spangler Decl. Ex. C (attached to Motion for Summary Judgment). On the other hand, the evidence demonstrates that Jeff Shuster, the white male whom Plaintiff complains received preferential treatment, worked 36.97 hours the week after his vacation, which was the week that Plaintiff was gone. Spangler Decl. ¶ 20; Spangler Decl. Ex. C (attached to Motion for Summary Judgment). Plaintiff's other requests for vacation were approved, either in whole or in part, without a requirement that she fill additional hours. Pl. Dep. Vol. 2, pp. 9–10; Pl. Dep. Vol. 2, Exs. 12–13 (attached to Motion for Summary Judgment).

### Discussion

#### A. Summary Judgment Standard

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the non-

moving party must then "set forth specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting FED.R.CIV.P. 56(e)).

In making a determination on a summary judgment motion, the court views the evidence in the light most favorable to the non-moving party, according that party the benefit of all reasonable inferences. *Bailey v. Blue Cross & Blue Shield of Virginia*, 67 F.3d 53, 56 (4th Cir.1995). Mere allegations and denials, however, are insufficient to establish a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Judges are not "required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party." *Id.* at 251, 106 S.Ct. 2505 (citations omitted). Thus, the moving party can bear its burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish its claim. *Celotex*, 477 U.S. at 331, 106 S.Ct. 2548 (Brennan, J., dissenting). "[A] complete failure of proof concerning an essential element of [a plaintiff's] case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548.

#### B. Plaintiff's Title VII Claim

■ In a Title VII employment discrimination or harassment case, the scope of a civil lawsuit is defined by the charges in a plaintiff's EEOC filing. *See Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir.2000) ("A plaintiff's EEOC charge defines the scope of her subsequent right to institute a civil suit.") (citing *Evans v.*

*Technologies Applications and Serv. Co.,* 80 F.3d 954, 962–63 (4th Cir.1996)); *see also King v. Seaboard Coast Line R.R.,* 538 F.2d 581, 583 (4th Cir.1976). The scope is limited such that "[o]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *King,* 538 F.2d at 583. In this case, Plaintiff will be limited by the claims made in her Charge of Discrimination with the Durham Human Relations Commission, (see Charge, Defendant's Ex. 8, attached to Defendant's Motion for Summary Judgment) as this charge was filed with the EEOC.

■ The only allegations that Plaintiff made in her administrative charge addressed her inability to secure her transfer to the position of Gas Station Attendant, and her allegations of disparate treatment of vacation requests. *Id.* Therefore, only these claims, and others reasonably related, may be raised in this civil suit. "To determine that a judicial complaint is reasonably related to an EEOC complaint, the court must find that the defendant had sufficient notice from the administrative charge of the alleged kinds of discrimination." *McGaw v. Biovail Pharmaceuticals, Inc.* 300 F.Supp.2d 371, 373 (D.Md. 2004) (*citing Brown v. Walt Disney World Co.,* 805 F.Supp. 1554, 1558 (M.D.Fla.1992) (*citing Jiron v. Sperry Rand Corp. (Sperry–Univac),* 423 F.Supp. 155, 159 (D.Utah 1975))).

*1. Plaintiff's first claim:* The first claim in Plaintiff's complaint is that "[t]he Defendant Company is liable to the Plaintiff for the Negligent Supervision and Retention of employee-Defendant, Pat Spangler."[2] Complaint, p. 6. There is no evidence that Pat Spangler had anything to do with Plaintiff's transfer to the position of Gas Station Attendant. Therefore, this claim can be considered only as it relates to Plaintiff's initial charge of disparate treatment regarding vacation policy.

■ In North Carolina, negligent supervision and retention is an independent tort based on the employer's liability to third parties. *See Smith v. Privette,* 128 N.C.App. 490, 495 S.E.2d 395, 398 (1998) (*citing Braswell v. Braswell,* 330 N.C. 363, 410 S.E.2d 897, 903 (1991)). To support such a claim, a plaintiff must prove that: (1) an incompetent employee committed a tortious act resulting in injury to the plaintiff, and that (2) prior to the act, the employer knew or had reason to know of the employee's incompetence. *Privette,* 495 S.E.2d at 398; *Graham v. Hardee's Food Systems,* 121 N.C.App. 382, 465 S.E.2d 558, 560 (1996); *Hogan v. Forsyth Country Club,* 79 N.C.App. 483, 340 S.E.2d 116, 124 (1986).

Defendant relies on a portion of Plaintiff's deposition transcript to prove that "Plaintiff has admitted that she cannot present any evidence that Spangler was 'incompetent' or that she committed a tortious act that injured Plaintiff." Mem. in support of Motion for Summary Judgment, p. 19 (citing Pl. Dep. Vol. 2, pp. 62–65 (attached to Motion for Summary Judgment)). Unfortunately, Defendant has failed to include pages 62, 63, and 64 in the deposition materials that they have provided to this court, and those pages are not included in the deposition materials provided by the Plaintiff. Defendant's assertion here, therefore, is not compelling.

Defendant demonstrates that Plaintiff worked fewer hours than Shuster during this period. (Although this information is

---

**2.** Notwithstanding her verbiage, Plaintiff does name Spangler as a Defendant.

gleaned from Ex. C rather than Ex. B). It seems as if Plaintiff's claim fails merely on the facts. Nevertheless, this court finds that nothing about a dispute over vacation policy rises to the level of a tortious act resulting in injury to the Plaintiff.

Plaintiff's charge that she was told she would have to work extra hours to receive time off in September 2001 while her white co-worker, Shuster, got similar time off without having to work extra hours would not be a tortious act resulting in injury to the Plaintiff even if it were true. There is ample evidence in the record that Plaintiff was consistently given all or most of the vacation time that she requested. Pl. Dep. Vol. 2, pp. 9–10; Pl. Dep. Vol. 2, Exs. 12–13 (attached to Motion for Summary Judgment). Curiously, Plaintiff does not discuss her vacation policy complaints at all in her response in opposition to summary judgment, neither in the statement of fact nor in the discussion. Therefore, Defendants should be granted summary judgment on this claim, which lacks any substance.

2. *Plaintiff's second claim:* The second claim in Plaintiff's complaint is that "[t]he Defendant Company is liable to the Plaintiff for subjecting her to race discrimination, failure to hire, demotion and racial harassment, including a racially Hostile Work Environment and for disparate treatment in the terms and conditions of her employment" in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e–2(a)(1)), 42 U.S.C § 1981 and N.C.Gen.Stat. § 143–422.2. Because Plaintiff makes no effort to relate this claim to her allegations about vacation time, this court will not spend time on that discussion either. Therefore, this claim will be examined only in light of Plaintiff's inability to secure her transfer to the position of Gas Station Attendant.

Under the burden shifting scheme established by *McDonnell Douglas Corp. v. Green*, a Title VII plaintiff must first establish a prima facie case of discrimination. 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). If the plaintiff establishes a prima facie case, then the burden shifts to the defendant to set forth a legitimate, nondiscriminatory reason for its action. *Id.* If the defendant is able to make such a showing, then the "presumption of discrimination drops out of the picture," and the plaintiff must prove that the legitimate, nondiscriminatory reasons offered by the employer were merely a pretext for discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

In order to establish a prima facie case of racial discrimination under *McDonnell Douglas*, a plaintiff must show that: (1) she is a member of a protected class; (2) she suffered some adverse employment action; (3) her job performance met the employer's legitimate expectations; and (4) the adverse employment action occurred under circumstances that support an inference of unlawful discrimination. *Wagstaff v. City of Durham*, 233 F.Supp.2d 739, 744 (M.D.N.C.2002); *McKiver v. General Electric Co.*, 11 F.Supp.2d 755, 758 (M.D.N.C.1997) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 519, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)).

It is clear that Title VII "affords no protection from discrimination unless there has been some adverse employment action by the employer." *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985). The Supreme Court defines an "adverse employment action" as "as significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant

change in benefits." *Burlington Indus. v. Ellerth,* 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). Likewise, "[i]n determining what constitutes an adverse employment action for Title VII purposes, the Fourth Circuit consistently has focused on 'whether there has been discrimination in what could be characterized as ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating.'" *Wagstaff,* 233 F.Supp.2d at 744 (quoting *Page v. Bolger,* 645 F.2d 227, 233 (4th Cir.1981)), *aff'd per curiam,* 70 Fed.Appx. 725 (4th Cir.2003); *see also Mosley v. Bojangles' Restaurants, Inc.,* No. 1:03CV00050, 2004 WL 727033, at *5 (M.D.N.C. March 30, 2004).

■■■ It is critical to note, however, that an employment action need not be "ultimate" to be "adverse." *Wagstaff,* 233 F.Supp.2d at 744 (citing *Von Gunten v. Maryland,* 243 F.3d 858, 865 (4th Cir.2001) (internal quotation marks omitted) (stating that "conduct short of 'ultimate employment decisions' can constitute adverse employment action")). As the Fourth Circuit Court of Appeals held in *Von Gunten,* an "[a]dverse employment action includes any retaliatory act or harassment if, but only if, that act or harassment results in an adverse effect on the terms, conditions, or benefits of employment." 243 F.3d at 866 (internal quotations omitted). Thus, the critical inquiry for this court is whether Plaintiff has demonstrated a genuine issue of material fact that her inability to secure a transfer to the position of Gas Station Attendant "had some significant detrimental effect" on her employment, *Wagstaff,* 233 F.Supp.2d at 744 (quoting *Boone,* 178 F.3d at 256 (4th Cir.1999)), that is, whether these actions adversely affected the terms, conditions, or benefits of her employment. *See Von Gunten,* 243 F.3d at 866; *see also Mosley,* 2004 WL 727033, at *5.

■■■ An employer's failure to hire an applicant and an employer's demotion of an applicant, both of which Plaintiff includes in her Title VII claim, are adverse employment actions. Nevertheless, a mere refusal to grant a transfer as the employee wishes does not qualify as an adverse employment action unless the refusal "had some significant detrimental effect" on the employee. *Boone v. Goldin,* 178 F.3d at 256; *Wagstaff,* 233 F.Supp.2d at 744. Effects which may be considered significant and detrimental include reduced pay, diminished opportunity for promotion, reduced responsibility, or lower rank. *See Boone,* 178 F.3d at 257; *Wagstaff,* 233 F.Supp.2d at 744.

■■■ To avoid summary judgement, then, Plaintiff must point to a genuine issue of material fact either that her requested transfer was a promotion and not merely a transfer (*see Burlington Indus.,* 524 U.S. at 761, 118 S.Ct. 2257) or that Defendant's refusal to follow through with the transfer resulted in a "significant detrimental effect" in her employment status. *Boone,* 178 F.3d at 256 (quoting *Burlington Indus.,* 524 U.S. at 761, 118 S.Ct. 2257). Even though Plaintiff's complaint clearly alleges a failure to hire claim, Defendant supplies a "failure to promote" analysis in their motion papers (pp. 13–15), since Plaintiff was clearly employed by Defendant at the time of the incident in question (*id.* at n. 11). Yet, Plaintiff proceeds, even in her response to this analysis, to deal only with a failure to hire analysis without offering any explanation of why such an analysis is relevant in this situation.

This court is satisfied that Plaintiff has failed entirely to show any issue of material fact as to whether there was an adverse employment action. Nothing in the pleadings demonstrates that Plaintiff's requested transfer was anything but a transfer,

and that the refusal to transfer—or transfer back, depending on how one characterizes it—brought any significant detrimental effect such as reduced pay, diminished opportunity for promotion, reduced responsibility, or lower rank. There is simply no adverse employment action and therefore, Plaintiff has failed at the first juncture to establish a prima facie case of racial discrimination under Title VII. In finding that Plaintiff has demonstrated no adverse employment action, this court also finds summarily that there was no failure to hire or to demote.

■ To state a claim for harassment including a hostile work environment under Title VII, a plaintiff must demonstrate that: (1) she experienced unwelcome harassment; (2) the harassment was based on race or gender; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; (4) there is some basis for imputing liability to the employer. *See Bass v. E.I. Dupont de Nemours & Co.,* 324 F.3d 761, 765 (4th Cir.2003); *see also Causey v. Balog,* 162 F.3d 795, 801 (4th Cir.1998). In order to survive summary judgment, Plaintiff must demonstrate that something about her process of applying for the transfer to the position of Gas Station Attendant brought unwelcome harassment. Plaintiff has simply failed to do so. None of the various reports of disparate treatment put forth by Plaintiff in the form of depositions or complaints by other employees is relevant because of the limited scope of Plaintiff's EEOC filing.

### C. Plaintiff's 42 U.S.C. § 1981 Claim

■ Plaintiff's § 1981 claim must be analyzed separately from her Title VII claim. It is true that the analytical framework for discrimination under these two statutes is the same, as is the analytical framework for harassment. *See Causey,*

162 F.3d at 801; *Love–Lane v. Martin,* 355 F.3d 766, 786 (4th Cir.2004); *Spriggs v. Diamond Auto Glass,* 242 F.3d 179, 184 (4th Cir.2001); *Mallory v. Booth Refrigeration Supply Co., Inc.,* 882 F.2d 908, 910 (4th Cir.1989). Plaintiff's § 1981 claim, however, is not confined to her EEOC charges.

Plaintiff's charge of discrimination under § 1981 is quickly dismissed according to the Title VII framework discussed above. Consideration of claims and evidence that were excluded from the Title VII discussion because of the limited scope of Plaintiff's EEOC charge does nothing to help Plaintiff in this matter. There is still no adverse employment action. Therefore, a charge of racial discrimination under § 1981 cannot be sustained.

Nevertheless, Plaintiff's charge under § 1981 that she was subjected to harassment including a hostile working environment may deserve a more thorough examination than this same charge under Title VII. This is, of course, because Plaintiff's EEOC charge limited the scope of the Title VII examination, but not of the § 1981 examination. Nevertheless, in the end, this court fails to find that Plaintiff was subjected to harassment or a hostile working environment.

■ To state a claim for harassment including a hostile work environment, a plaintiff must demonstrate that: (1) she experienced unwelcome harassment; (2) the harassment was based on race or gender; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; (4) there is some basis for imputing liability to the employer. *See Bass,* 324 F.3d at 765; *see also Causey,* 162 F.3d at 801. This court does not even reach a discussion of the fourth element, whether or not there is some basis for imputing liability to the employer, for Plaintiff has

failed entirely to demonstrate any harassment based on her race that alters the conditions of her employment or creates an abusive atmosphere.

To begin with, Plaintiff fails to distinguish the significance of her harassment or hostile working environment claims as opposed to her racial discrimination claim. The heading on the section of her Memorandum in which she argues that her hostile environment claim should not be dismissed makes reference only to "other acts of race discrimination" under § 1981. Nevertheless, this court will demonstrate that Plaintiff's harassment/hostile working environment claim fail independently of her discrimination claim. Plaintiff does set out the correct analytical framework for her harassment/hostile working environment claim. Opposition to Defendant's Motion for Summary Judgment, pp. 16–17.

 Plaintiff admitted that she has never heard any of her supervisors at Costco use a racial slur. Pl. Dep. Vol. 2, pp. 36–37 (attached to Motion for Summary Judgment) (Q: "And would you agree that you have never heard Ms. Spangler, or any other supervisor or manager at Costco, use what we would call a 'racial slur.' Or, for instance, the 'N' word—or that kind of language in the workplace, correct?" A: "No. They are not gonna say nothing like that around us."). The only name-calling evidence with which Plaintiff supports her claim that she was being harassed based upon her race is the fact that Spangler referred to food court employees as "you people." Opposition to Defendant's Motion for Summary Judgment, p. 17. This court is simply not persuaded that such a statement raises any question of material fact as to Plaintiff's claims because some of the food court employees were white.

Plaintiff sets out several other issues which she believes demonstrate the type of harassment that § 1981 protects. Arguing that this claim should survive summary judgment, Plaintiff reminds the court that she felt that the policy about wearing jewelry in the food court was disparately enforced (*id.*); that she "believed black employees of Costco were being overlooked for positions whenever white employees also applied for the same position" or were not even interviewed (*id.*); that a "particular [pregnant] black female" was required to do outside work, gathering carts, while a pregnant white female was allowed to remain indoors (*id.*); that one of her co-workers felt that Spangler was on a power trip over the "black people" (*id.*); that her white co-worker Schuster was given better opportunities than the black employees (*id.*); that a black co-worker says she had to do heavy lifting while she was pregnant despite a note from her doctor (*id.* at 9); and that because of all of this stress, Plaintiff had to go to the doctor and was diagnosed with stress associated with work (*id.*). Nothing here sustains a question of material fact as to whether there was the sort of pervasive, abusive harassment based upon race against which § 1981 protects. Nothing here indicates harassment which is frequent, severe, physically threatening, or humiliating. *See, e.g., Beardsley v. Webb,* 30 F.3d 524, 529 (4th Cir.1994). Plaintiff's harassment/hostile working environment claim under § 1981 fails and Defendants should be granted summary judgment on this issue.

### D. Plaintiff's N.C.Gen.Stat. § 143–422.2 Claim

 Plaintiff's claim that Defendant is liable under the N.C.Gen.Stat. § 143–422.2, the North Carolina Equal Employment Practices Act (NCEEPA) fails as a matter of law. The NCEEPA states in pertinent part: "It is the public policy of this State to protect and safeguard the right and opportunity of all persons to

seek, obtain and hold employment without discrimination or abridgement on account of race ... by employers which regularly employ 15 or more employees." N.C.Gen. Stat. § 143–422.1. North Carolina courts have not recognized a private cause of action under the NCEEPA. (Rather, most courts have applied the NCEEPA only to common law wrongful discharge claims or in connection with other specific statutory remedies.) *See Smith v. First Union Nat. Bank,* 202 F.3d at 247; *see McFadden v. Trend Community Health Services,* 114 F.Supp.2d 427, 430 (W.D.N.C.2000) (dismissing plaintiff's claim under North Carolina's Equal Employment Practices Act because no private right of action is provided under the statute); *Percell v. International Business Machines, Inc.,* 765 F.Supp. 297 (E.D.N.C. 1991) (stating that "in enacting the Equal Employment Practices Act, the North Carolina legislature chose not to provide any remedies beyond those available under federal discrimination statutes").

In *Mullis v. Mechanics & Farmers Bank,* 994 F.Supp. 680 (M.D.N.C.1997), the court held that "absent a clear indication from the courts or the legislature of North Carolina that a private right of action does exist under the NCEEPA, it would be inappropriate for a federal court to create a private right of action under the NCEEPA, and this court declines to do so." *Id.* at 687; *see also Ridenhour v. Concord Screen Printers, Inc.,* 40 F.Supp.2d 744, 746 (M.D.N.C.1999). This court agrees and Defendant should be granted summary judgment on this issue.

### Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that Defendant's Motion for Summary Judgment (docket no. 16) be **GRANTED.** Furthermore, **IT IS ORDERED** that the parties stand down from final trial preparation and that this case be, and it is, **HEREBY REMOVED** from the master calendar for October 2004.

September 3, 2004.